# IN THE COURT OF APPEALS OF IOWA

––––––––––––––

No. 24-2004
Filed July 22, 2026

––––––––––––––

**Fermin Jose Maldonado,**
Applicant–Appellant,
v.
**State of Iowa,**
Respondent–Appellee.

––––––––––––––

Appeal from the Iowa District Court for Polk County,
The Honorable Jeffrey Farrell, Judge.

––––––––––––––

**AFFIRMED**

––––––––––––––

Alexander Smith of Parrish Kruidenier L.L.P., Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant
Attorney General, attorneys for appellee.

––––––––––––––

Considered without oral argument
by Ahlers, P.J., and Buller and Sandy, JJ.
Opinion by Ahlers, P.J.

**AHLERS, Presiding Judge.**

After a jury found that Fermin Maldonado forced his way into a woman's apartment and sexually assaulted her, it found him guilty of third-degree sexual abuse and first-degree burglary. On his direct appeal from those convictions, we affirmed his convictions while providing this summary of the underlying facts:

> According to [the woman]'s testimony, she and Maldonado knew each other for six years and were occasionally romantically involved. Maldonado has a history of violence during sexual encounters with her, including hitting her, strangling her, and dragging her by her hair, which led to her obtaining a protective order against him in October 2020. They saw each other on March 28, 2021, and "[p]ossibly" had consensual sex that day. He called her twenty-two times over the next three days. His behavior concerned her so much she developed a safety plan, which included a code word she could text to her social worker to alert the worker of a likely assault happening and to call the police.

> [The woman] further testified that on March 31, 2021, Maldonado knocked on her apartment door in Des Moines, but she did not answer. He then walked around the building and knocked on her apartment window. She opened the window "about a fourth of the way to talk to him" and told him he could not come inside her apartment and "was trespassed." Disregarding her wishes, Maldonado opened the window wider and entered the apartment, prompting [the woman] to text the emergency code word to her social worker. After Maldonado used the bathroom and talked to [the woman], he removed her pants and forced her to have vaginal intercourse de[s]pite her crying, pushing him back, and telling him to stop.

> Officer Daniel Dempsey with the Des Moines Police Department responded to the social worker's call and soon arrived at [the woman]'s apartment. He knocked on the apartment door and, about thirty seconds later, [she] opened the door. Officer Dempsey's body camera recorded the encounter, showing [the woman] crying and holding a blanket around her lower half. [She] said Maldonado forced her to have sex with him and then climbed out through her apartment window when he heard the knocking on her door. Officer Dempsey went outside and, based on a description she provided, quickly located Maldonado across the street from the

> apartment. Maldonado gave a false name before admitting his true name to the officer. In a later police interview, Maldonado initially denied having sex with [the woman] on March 31, but he eventually admitted to the act though he claimed it was consensual.

*State v. Maldonado*, No. 21-1363, 2023 WL 2905125, at *1 (Iowa Ct. App. Apr. 12, 2023).

Maldonado filed an application for postconviction relief (PCR) claiming (1) actual innocence due to the woman's recantation of her trial testimony; and (2) his trial counsel was ineffective because he did not cross-examine the woman about her deposition statements that Maldonado claims contradicted her trial testimony. The PCR court denied relief, and Maldonado appeals.

## I.      Standard of Review

We review claims of actual innocence de novo. *Wyldes v. State*, 36 N.W.3d 72, 89 (Iowa 2026). PCR claims based on ineffective assistance of counsel are also reviewed de novo. *Trane v. State*, 16 N.W.3d 683, 692 (Iowa 2025).

## II.     Error Preservation

We first address the State's claim that Maldonado failed to preserve error on two issues he raises on appeal. *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)). On appeal, Maldonado argues his actual innocence claim based on newly discovered evidence should be assessed using the newly-discovered-evidence test because he was convicted after a trial rather than by guilty plea. *See Schmidt v. State*, 909 N.W.2d 778, 789, 797 (Iowa 2018) (allowing actual innocence claims for defendants who pleaded guilty and

establishing the test for actual innocence). He also argues that courts should not view recantations with "the utmost suspicion" as our caselaw requires. *See Jones v. State*, 479 N.W.2d 265, 275 (Iowa 1991).

Maldonado may have preserved error on the first of these arguments, but not the second. Although Maldonado did not specifically argue for application of the newly-discovered-evidence test before the lower court, his actual innocence claim was based on newly discovered evidence, and the postconviction court ruled on a newly-discovered-evidence claim, so we will assume without deciding that this issue was preserved. *See Lamasters*, 821 N.W.2d at 862. But even if Maldonado preserved error, we are not at liberty to overrule supreme court precedent. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa App. 2014). And that precedent requires Maldonado, as an applicant bringing a freestanding actual-innocence claim, to "show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence." *See Schmidt*, 909 N.W.2d at 797.

In contrast, he neither raised nor secured a ruling on his second argument. *See Lamasters*, 821 N.W.2d at 862. Maldonado claims he was not required to do so to preserve error because the district court did not have the authority to overrule supreme court precedent. While it is true that the district court didn't have authority to overrule supreme court precedent, Maldonado still had the obligation to raise the issue and secure a ruling before raising it on appeal. *See State v. Ruiz*, 18 N.W.3d 453, 457 (Iowa 2025) (rejecting the argument that the defendant did not have the obligation to raise an issue with the district court to preserve it for appeal because "it would

make little sense to require a party to argue existing law should be overturned before a court without the authority to do so"). Since he didn't do that, we will not consider this argument. *See id.*

## III. Analysis

We now turn to the merits of Maldonado's actual innocence and ineffective-assistance-of-counsel claims.

### A. Actual Innocence

Maldonado's actual innocence claim is based on newly discovered evidence in the form of the woman's recantation. At Maldonado's criminal trial, she testified that Maldonado sexually abused her after he entered her apartment without permission. She now says that Maldonado did not sexually abuse her, they did not have consensual or nonconsensual sex on the date at issue, and she testified about Maldonado sexually abusing her because her then-boyfriend coerced her into such testimony with threats.

The PCR court found the woman's recantation to lack credibility. We defer to that credibility determination, even with de novo review. *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024). And following our review of the record, we agree with the PCR court that the recantation testimony is suspect and is not sufficient to lead us to conclude that no reasonable fact finder could find Maldonado guilty. *See Schmidt*, 909 N.W.2d at 797.

Testimony at the PCR trial revealed that, about a week after Maldonado was sent to prison for these offenses, he and the woman reconciled such that they have "some sort of relationship." They continue to communicate with each other, and the woman contacted both the county attorney's office and Maldonado's lawyer saying she wanted to drop the charges. Given her reconciliation with Maldonado and her attempts to get

the charges dropped, her PCR testimony is not credible for those reasons alone. But there is more. Her PCR testimony did not match Maldonado's PCR testimony. She claimed they were fighting, he broke into her apartment through the bedroom window, they argued, and they did not have sex. Maldonado claimed they were not fighting, he entered through the window because he did not have a key, and they had consensual sex.

Besides the fact the woman's PCR testimony contradicted Maldonado's, it also contradicted evidence presented at the criminal trial. That evidence included rape exam test results that revealed the presence of Maldonado's sperm in her vagina—contradicting her PCR testimony they did not have sex. That evidence also included the fact that the woman texted an emergency code word to her social worker, who summoned the police. The fact that the code word was sent was consistent with Maldonado attacking the woman, and it contradicts the woman's PCR testimony. Also, when the police arrived, Maldonado fled from the apartment, and when the police found him, he gave them a false name. The police found the woman crying, naked from the waist down, wrapped in a blanket, and with red marks on her face. All this evidence contradicts the woman's PCR testimony. And her PCR testimony that she was coerced by threats from her then-boyfriend to make false claims of sexual abuse against Maldonado was contradicted by the fact that the boyfriend was in federal prison at the time of the assault—or at the very least by the time she gave deposition and trial testimony in the criminal case.

After considering the entire record, we agree with the PCR court that the woman's PCR testimony lacks credibility and does not lead to the conclusion that no reasonable fact finder could find Maldonado guilty. *See id*. As such, we reject Maldonado's actual innocence claim.

## B. Ineffective Assistance

Maldonado also claims trial counsel was ineffective because he failed to impeach the woman at trial with inconsistent statements she made at her deposition. He claims the woman should have been impeached with evidence that her relationship with Maldonado did not end in October 2020 as she claimed at trial. He also argues his counsel should have impeached the woman when she testified at trial that she did not remember Maldonado striking her in the face on March 31, because at her deposition she was sure he had not struck her.

To prove ineffective assistance of counsel Maldonado must show that counsel breached a duty and prejudice resulted. *Lamasters*, 821 N.W.2d at 866. If either element is lacking, we affirm. *Id.* To meet the prejudice prong Maldonado must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. [R]easonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (alteration in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Maldonado did not meet his burden as to prejudice. Whether he had an ongoing relationship with the woman between October 2020 and the time of the sexual abuse would not have changed the outcome of the criminal trial. That is because whether or not he was in relationship or had recently been in a relationship with the woman has little to no bearing on whether the specific sex act in question was consensual. In the face of the woman's testimony, this claimed inconsistency does not undermine confidence in the outcome.

The other impeachment evidence Maldonado claims his trial counsel should have presented is also weak. The degree of confidence the woman had regarding whether Maldonado struck her would not have affected the

outcome. Even if the distinction was made clear to the jury, it would not have overcome the other evidence that Maldonado sexually abused her.

Because neither of the errors Maldonado claims would have undermined the outcome of the trial given the strength of the State's case, Maldonado failed to prove the prejudice prong of his ineffective-assistance-of-counsel claim. *See id.* Therefore, we affirm the PCR court's rejection of this claim.

## IV.    Conclusion

Having considered all of Maldonado's claims on appeal, we affirm the district court's denial of relief. The woman's recantation was not credible, so we deny his actual innocence claim based on that new evidence. Trial counsel's failure to impeach the woman with purportedly inconsistent testimony did not prejudice Maldonado, because the purported impeachment evidence would not have been sufficient to undermine our confidence in the outcome of the case.

**AFFIRMED.**